IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Tori Morton, | ) | Case No. 8:17-cv-01949-BHH-JDA |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| City of Seneca Police Department, Mark | ) | |
| Tiller, John Covington, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

This matter is before the Court on a motion to dismiss filed by Defendant Mark Tiller ("Tiller"). [Doc. 30.] Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2), D.S.C., this magistrate judge is authorized to review all pretrial matters in this case and to submit findings and recommendations to the District Court.

On July 21, 2017, Plaintiff filed the instant action, alleging violations of her constitutional rights pursuant to 42 U.S.C. § 1983; 42 U.S.C. § 1985; negligent hiring, training, and supervision; and intentional infliction of emotional distress. [Doc. 1.] On November 29, 2017, Tiller filed a motion to dismiss. [Doc. 30.] Plaintiff filed a response in opposition on December 13, 2017. [Doc. 31.] Accordingly, the motion is ripe for review.

## BACKGROUND[1]

This case arises from an incident on July 26, 2015, in which Zachary Hammond ("Hammond") was shot and killed by Tiller, an officer with Defendant City of Seneca Police Department ("Seneca Police Department").  Plaintiff alleges that she was on a date with Hammond on July 26, 2015.  [Doc. 1 at 4 ¶ 8.]  Plaintiff and Hammond went through a drive-through window at McDonalds and then pulled into Hardees after realizing they did not have enough napkins.  [*Id.* at 5 ¶ 12.]  While driving, Hammond, pretending to be Plaintiff, allegedly communicated with a confidential informant to set up a drug transaction via text message.  [*Id.* at 5 ¶¶ 11, 17.]  Plaintiff was unaware that Hammond was pretending to be her or that Hammond may have been in contact with a confidential informant.  [*Id.* at 5 ¶¶ 11, 14.]  The Seneca Police Department was acting on a tip from a confidential informant that a drug sale was going to take place in the Hardees parking lot. [*Id.* at 5 ¶ 13.]

Hammond pulled into the far back right corner of the Hardees parking lot, next to a pickup truck.  [*Id.* at 5 ¶ 15.]  As Hammond stopped the car, a man later identified as an undercover narcotics officer exited the pickup truck and approached Hammond's car.  [*Id.* at 5 ¶ 16.]  Plaintiff sat in the passenger seat as the car was rushed from both sides.  [*Id.* at 5 ¶ 18.]  An unmarked car raced behind Hammond's car, and Tiller, dressed in dark

---

[1]The facts included in this Background section are taken directly from the numbered paragraphs in Plaintiff's Complaint containing factual allegations and causes of action. [Doc. 1 at 3–18.] As previously explained by this Court, Plaintiff's Complaint is broken into two parts: two-and-a -half pages of text labeled "Introduction" and the remainder is numbered paragraphs containing factual allegations and causes of action.  [Doc. 29 at 1–2.]  The Court granted a motion to strike the introductory paragraphs of Plaintiff's Complaint on November 14, 2017.  [Doc. 29.]

green fatigues, rushed from the vehicle with a pistol pointed at Hammond while yelling. [*Id.*] Neither Plaintiff nor Hammond were armed, and Plaintiff thought they were being carjacked. [*Id.* at 5 ¶ 19.]

Hammond tried to put the car in park but was shaking, and as the car began to move away from Tiller, Tiller fired gunshots. [*Id.* at 6 ¶¶ 21–23.] Hammond was struck twice by bullets, and one bullet hit Plaintiff's passenger seat backrest. [*Id.* at 6 ¶ 23.] Hammond's car rolled to a stop as he died. [*Id.* at 6 ¶ 24.]

Tiller continued barking commands at Plaintiff, and Plaintiff was forced to the pavement with her head facing underneath Hammond's car as Hammond was dragged out of the driver seat and onto the pavement. [*Id.* at 6–7 ¶¶ 25, 31, 33–34.] Plaintiff was then pulled from the pavement and questioned, with officers from the Seneca Police Department insisting that Plaintiff knew where a gun was. [*Id.* at 7 ¶ 37.] Plaintiff was taken to a back area of the parking lot, interrogated, and told that she could go home if she would tell the officers where the gun was. [*Id.* at 7 ¶ 38.] Plaintiff could not tell them what they wanted to hear because there was no gun. [*Id.* at 7 ¶¶ 37–38.] Next, Plaintiff was taken to an undisclosed site for further questioning and then back to the Hardees parking lot where she thought she was going to be released. [*Id.* at 8 ¶¶ 39–40.] Instead, she was arrested for marijuana found in Hammond's car. [*Id.* at 8 ¶ 40.] The Seneca Police Department issued Plaintiff Uniform Traffic Citation Ticket #42296GJ and took her to the Oconee County Detention Center, where she was booked and spent the night in fear. [*Id.* at 41–43.] As of the date this action was filed, the Seneca Police Department had held the case against Plaintiff open without any prosecution but had refused to dismiss the case. [*Id.* at 8 ¶ 41.]

3

Plaintiff had no illegal substances on her or in her system; Hammond was later found to have cocaine in his pocket and in his system.  [*Id.* at 8 ¶ 44.]

Plaintiff alleges that the Seneca Police Department began crafting a story to depict the incident as one where Hammond attempted to run over Tiller.[2]  [*Id.* at 8 ¶ 45.] Defendant John Covington ("Covington"), Chief of the Seneca Police Department, stated to multiple news outlets that undercover agents were there to buy drugs from a woman passenger and that Hammond was shot in the chest after accelerating toward the officer. [*Id.* at 8 ¶¶ 45, 47.]  Although the Seneca Police Department alleges self-defense, Plaintiff contends that the dash-cam video shows Tiller shooting Hammond from behind.  [*Id.* at 8 ¶ 46.]

Plaintiff further contends that she was targeted by the Seneca Police Department for weeks after her arrest, with undercover operatives following her.  [*Id.* at 9 ¶ 49.]  She lives in fear of retribution by the Seneca Police Department and Tiller.  [*Id.* at 9 ¶ 50.]

Based on these factual allegations, Plaintiff alleges a violation of her constitutional rights against Tiller and Covington; negligent hiring, training, and supervision against the Seneca Police Department; conspiracy under 42 U.S.C. § 1985 against Tiller and Covington; and intentional infliction of emotional distress ("IIED") against all Defendants. [Doc. 1.]  Plaintiff seeks damages.  [*Id.*]

---

[2]Plaintiff alleges that Tiller can be heard on the dash-cam video exclaiming, "he tried to hit me," to which another officer casually replied, "he did, I seen it."  [Doc. 1 at 6 ¶ 29.] Plaintiff further asserts that Tiller states, "I just shot this guy on the ground," and then, when asked if he has video running, Tiller says he needs to call his "rep" and turned off the audio recording equipment.  [*Id.* at 6 ¶ 30.]

## APPLICABLE LAW

**Requirements for a Cause of Action Under § 1983**

This action is filed pursuant to 42 U.S.C. § 1983, which provides a private cause of action for constitutional violations by persons acting under color of state law. Section 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). Accordingly, a civil action under § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief." *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 707 (1999).

Section 1983 provides, in relevant part,

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or any person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . .

42 U.S.C. § 1983. To establish a claim under § 1983, a plaintiff must prove two elements: (1) that the defendant "deprived [the plaintiff] of a right secured by the Constitution and laws of the United States" and (2) that the defendant "deprived [the plaintiff] of this constitutional right under color of [State] statute, ordinance, regulation, custom, or usage." *Mentavlos v. Anderson*, 249 F.3d 301, 310 (4th Cir. 2001) (third alteration in original) (citation and internal quotation marks omitted).

The under-color-of-state-law element, which is equivalent to the "state action" requirement under the Fourteenth Amendment,

5

> reflects judicial recognition of the fact that most rights secured by the Constitution are protected only against infringement by governments.  This fundamental limitation on the scope of constitutional guarantees preserves an area of individual freedom by limiting the reach of federal law and avoids imposing on the State, its agencies or officials, responsibility for conduct for which they cannot fairly be blamed.

*Id.* (quoting *Dowe v. Total Action Against Poverty in Roanoke Valley,* 145 F.3d 653, 658 (4th Cir. 1998)) (internal citations and quotation marks omitted).  Nevertheless, "the deed of an ostensibly private organization or individual" may at times be treated "as if a State has caused it to be performed."  *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001).  Specifically, "state action may be found if, though only if, there is such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'"  *Id.* (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974)).  State action requires both an alleged constitutional deprivation "caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State . . . or by a person for whom the State is responsible" and that "the party charged with the deprivation [is] a person who may fairly be said to be a state actor."  *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982).  A determination of whether a private party's allegedly unconstitutional conduct is fairly attributable to the State requires the court to "begin[ ] by identifying 'the specific conduct of which the plaintiff complains.'"  *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 51 (1999) (quoting *Blum* v. *Yaretsky*, 457 U.S. 991, 1004 (1982)).

**Rule 12(b)(1) Dismissal Standard**[3]

A motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure examines whether the complaint fails to state facts upon which jurisdiction can be founded. Fed.R.Civ.P. 12(b)(1). Typically, it is the plaintiff's burden to prove jurisdiction. *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991). "However, where a party challenges the subject matter jurisdiction of the court on the grounds that the party is an arm of the state entitled to sovereign immunity, the burden of persuasion lies with the party asserting the immunity." *Hutto v. S.C. Ret. Sys.*, 899 F. Supp. 2d 457, 466 (D.S.C. 2012) (citing *Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ.*, 466 F.3d 232, 237 (2d Cir. 2006)). The court may dismiss a case for lack of subject matter jurisdiction on any of the following bases: "'(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.'" *Johnson v. United States*, 534 F.3d 958, 962 (8th Cir. 2008) (quoting *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981)).

---

[3]The Fourth Circuit has been "unclear on whether a dismissal on Eleventh Amendment immunity grounds is a dismissal for failure to state a claim under Rule 12(b)(6) or a dismissal for lack of subject matter jurisdiction under Rule 12(b)(1)." *Andrews v. Daw*, 201 F.3d 521, 524 n.2 (4th Cir. 2000) (comparing *Biggs v. Meadows*, 66 F.3d 56, 58–59 (4th Cir. 1995), with *Abril v. Va.*, 145 F.3d 182, 184 (4th Cir. 1998), and *Republic of Paraguay v. Allen*, 134 F.3d 622, 626 (4th Cir. 1998)). Because Tiller argues Eleventh Amendment immunity as a subject matter jurisdiction issue and the recent trend among courts within the Fourth Circuit is to consider sovereign immunity under Rule 12(b)(1), *see Hutto v. S.C. Ret. Sys.*, 899 F. Supp. 2d 457, 466 (D.S.C. 2012) (citing *Trantham v. Henry Cty. Sheriff's Office*, 4:10-cv-00058, 2011 WL 863498 (W.D. Va. Mar. 10, 2011)), the Court considers Tiller's Eleventh Amendment immunity argument pursuant to Rule 12(b)(1).

**Judgment on the Pleadings Standard**[4]

Rule 12(c) permits a party to move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial. . . . " Fed.R.Civ.P. 12(c).  Where a Rule 12(b)(6) defense is raised by a Rule 12(c) motion for judgment on the pleadings, the motion under Rule 12(c) is reviewed under the same standards as a motion under Rule 12(b)(6).  *Rodriguez v. Finan*, No. 2:15-cv-2317-BHH, 2016 WL 1258314, at *7 n.2 (D.S.C. Mar. 31, 2016) (citing *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999); *see also Burbach Broadcasting Co. of Delaware v. Elkins Radio Corp.*, 278 F.3d 401, 405–06 (4th Cir. 2002).

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a claim should be dismissed if it fails to state a claim upon which relief can be granted.  When considering a motion to dismiss, the court should "accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff."  *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993).  However, the court "need not accept the legal conclusions drawn from the facts" nor "accept as true unwarranted inferences, unreasonable conclusions, or arguments."  *Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd.*

---

[4]Although Tiller filed his motion as a motion to dismiss under Rule 12(b)(6), the Court considers the motion under Rule 12(c).  Generally, a Rule 12(b)(6) motion to dismiss should be filed before a responsive pleading is filed.  However, Rule 12(h)(2) provides that the defense of failure to state a claim upon which relief can be granted may be raised by a motion under Rule 12(c).  Fed. R. Civ. P. 12(h)(2).  Accordingly, the Court considers the motion as a Rule 12(c) motion for judgment on the pleadings, raising the defense of failure to state a claim upon which relief can be granted.  *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999).  Considering the motion as a Rule 12(c) motion has no practical effect because, as explained, a "motion for judgment on the pleadings is decided under the same standard as a motion to dismiss under Rule 12(b)(6)."  *Deutsche Bank Nat'l Trust Co. v. IRS*, 361 F. App'x 527, 529 (4th Cir. 2010).

*P'ship*, 213 F.3d 175, 180 (4th Cir. 2000).  Further, for purposes of a Rule 12(b)(6) motion, a court may rely on only the complaint's allegations and those documents attached as exhibits or incorporated by reference.  *See Simons v. Montgomery Cty. Police Officers*, 762 F.2d 30, 31 (4th Cir. 1985).  If matters outside the pleadings are presented to and not excluded by the court, the motion is treated as one for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.  Fed. R. Civ. P. 12(d).

With respect to well-pleaded allegations, the United States Supreme Court explained the interplay between Rule 8(a) and Rule 12(b)(6) in *Bell Atlantic Corp. v. Twombly*:

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

550 U.S. 544, 555 (2007) (footnote and citations omitted); *see also* 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1216, at 235–36 (3d ed. 2004) ("[T]he pleading must contain something more . . . than a bare averment that the pleader wants compensation and is entitled to it or a statement of facts that merely creates a suspicion that the pleader might have a legally cognizable right of action.").

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

9

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). The plausibility standard reflects the threshold requirement of Rule 8(a)(2)—the pleader must plead sufficient facts to show he is entitled to relief, not merely facts consistent with the defendant's liability. *Twombly*, 550 U.S. at 557 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Iqbal*, 556 U.S. at 678 ("Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" (quoting *Twombly*, 550 U.S. at 557)). Accordingly, the plausibility standard requires a plaintiff to articulate facts that, when accepted as true, demonstrate that the plaintiff has stated a claim that makes it plausible the plaintiff is entitled to relief. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678).

## **DISCUSSION**

In his motion to dismiss, Tiller argues (a) Plaintiff's IIED claim against Tiller is barred by the South Carolina Tort Claims Act ("SCTCA"); (b) the Complaint fails to state a claim under 42 U.S.C. § 1985 because the facts pled neither constitute a conspiracy nor prove intentional and purposeful discrimination; (c) the Complaint is devoid of facts to infer that Tiller violated Plaintiff's constitutional rights; (d) Tiller is immune from suit in his official capacity pursuant to the Eleventh Amendment; and (e) Tiller is entitled to qualified immunity. [Doc. 30.] The Court agrees that Plaintiff's §§ 1983 and 1985 claims against

Tiller should be dismissed because Tiller is entitled to immunity pursuant to the Eleventh Amendment, but finds that Plaintiff's IIED claim against Tiller should not be dismissed.[5]

**Eleventh Amendment Immunity**

The Eleventh Amendment prohibits federal courts from entertaining an action against a state. *See, e.g.*, *Alabama v. Pugh*, 438 U.S. 781, 782 (1978) (per curiam) (citations omitted); *Hans v. Louisiana*, 134 U.S. 1, 10–11 (1890). Further, Eleventh Amendment immunity "extends to 'arm[s] of the State,' including state agencies and state officers acting in their official capacity," *Cromer v. Brown*, 88 F.3d 1315, 1332 (4th Cir. 1996) (alteration in original) (internal citations omitted), because "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit

---

[5]Because, as discussed below, the Court finds that Plaintiff brings the action against Tiller in his official capacity and that Tiller is entitled to immunity pursuant to the Eleventh Amendment, the Court declines to fully address Tiller's arguments that Plaintiff failed to state a claim with respect to her §§ 1983 and 1985 claims and that Tiller is entitled to qualified immunity. However, the Court notes that Tiller's argument with respect to the § 1983 claim addresses Plaintiff's Fourth and Fourteenth Amendment rights [Doc. 30 at 8–12], but Plaintiff's response clarifies, and the Court's review of the Complaint supports, that Plaintiff alleges violations of her Sixth and Fourteenth Amendment rights [Doc. 31 at 4–9]. Moreover, although Tiller argues the Complaint fails to allege that Plaintiff suffered any injury, Tiller cites no authority for the Court to dismiss the § 1983 claim for this reason. [Doc. 30 at 11.] Additionally, Tiller's argument with respect to Plaintiff's § 1985 claim asserts Plaintiff has failed to state a claim under 42 U.S.C. § 1985(3). [Doc. 30 at 5–8.] However, Plaintiff's § 1985 claim is purportedly brought under 42 U.S.C. § 1985(2). [Doc. 31 at 1–4; *compare* Doc. 1 ¶ 92 ("Upon information and believe, Chief Covington and Lt. Tiller's actions were calculated and specifically intended to impede, hinder, and obstruct Tori for the full protection of the laws of this State for properly enforcing her right not to be intimidated into making an untrue statement to corroborate Lt. Tiller's actions in killing Zachary.") *with* 42 U.S.C. § 1985(2) (". . . if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws").] Accordingly, Tiller addressed a different subsection of § 1985 from the subsection Plaintiff alleges was violated.

against the official's office . . . [and] is no different from a suit against the State itself," *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (internal citation omitted). Therefore, Eleventh Amendment immunity protects state agencies and state officials sued in their official capacities from liability for monetary damages under 42 U.S.C. § 1983. *Id.* The same immunity applies to claims under 42 U.S.C. § 1985. *Coffin v. S.C. Dep't of Soc. Svcs.*, 562 F. Supp. 579, 585 (D.S.C. 1983). Plaintiff brought this action against Tiller "in his former capacity as an off[ic]er of the Seneca Police" [Doc. 1 at 4 ¶ 3] and concedes that the Complaint asserts that "Tiller was acting in his official capacity" [Doc. 31 at 9]. As a result, Plaintiff's §§ 1983 and 1985 claims against Tiller should be dismissed because Tiller is entitled to immunity pursuant to the Eleventh Amendment.[6]

**Intentional Infliction of Emotional Distress Claim**

Claims for intentional infliction of emotional distress against a governmental entity, its employees, and/or agents are barred by the SCTCA. *See* S.C. Code Ann. § 15-78-30(f) (excluding claims for intentional infliction of emotional harm under the SCTCA). However, the SCTCA "does not grant an employee immunity from suit if it is proved that his conduct

---

[6]The undersigned notes that Plaintiff requests leave to amend the Complaint in her response in opposition to Tiller's motion. [Doc. 31 at 9, 10.] However, Plaintiff has not filed a motion to amend at this time. If Plaintiff moves to amend the Complaint to assert the claims against Tiller in both his individual and official capacities, leave to amend should be granted because "examin[ing] the nature of [Plaintiff's] claims, the relief sought, and the course of proceedings" indicates Tiller could be sued in his individual capacity based on the allegations in the Complaint. *See Biggs v. Meadows*, 66 F.3d 56, 61 (4th Cir. 1995) (listing as factors to determine whether a state official is being sued in a personal capacity: (1) the failure to allege that the defendant acted in accordance with a governmental policy or custom, or the lack of indicia of such a policy or custom on the face of the complaint; (2) a request for compensatory or punitive damages because such relief is unavailable in official capacity suits; and (3) the nature of defenses raised, e.g., the assertion of qualified immunity as a defense, and noting that the underlying inquiry is whether a plaintiff's intention to hold a defendant personally liable can be ascertained fairly).

12

was not within the official scope of his employment, *or* he acts with actual malice, *or* he has an intent to harm." *Poloschan v. Simon*, No. 9:13-1937-SB-BM, 2014 WL 1713562, at *13 (D.S.C. Apr. 29, 2014) (citing *McCall v. Williams*, 52 F. Supp. 2d 611, 615 (D.S.C. 1999); *Brown v. Cty. of Berkeley*, 622 S.E.2d 533, 537–38 (S.C. 2005); *Sanders v. Prince*, 403 S.E.2d 640, 643 (S.C. 1991)); *see also* S.C. Code Ann. § 15-78-70(a) & (b).  Here, Plaintiff alleges that Tiller's actions exceeded the scope of his employment[7] [Doc. 1 at 17 ¶ 102] and that Tiller intentionally fired his firearm [*id.* at 17 ¶ 99].  Accordingly, Tiller is not entitled to immunity from suit under the SCTCA for Plaintiff's IIED claim.

### **RECOMMENDATION**

Wherefore, based upon the foregoing, the Court recommends that Tiller's motion to dismiss be GRANTED with respect to Plaintiff's §§ 1983 and 1985 claims and DENIED with respect to Plaintiff's IIED claim.

IT IS SO RECOMMENDED.

s/Jacquelyn D. Austin
United States Magistrate Judge

April 18, 2018
Greenville, South Carolina

---

[7]Plaintiff specifically pleads that Tiller exceeded the scope of his employment [Doc. 1 at 17 ¶ 102] even though Plaintiff brings the claims against Tiller in his official capacity [*id.* at 4 ¶ 3.]  As one judge in this district has noted, the concepts of official versus individual capacity are relevant to Eleventh Amendment immunity while the concept of scope of employment is relevant to immunity under the SCTCA. *DeCecco v. Univ. of S.C.*, 918 F. Supp. 2d 471, 505 n. 42 (D.S.C. 2013).